IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

TAMORAH JEROME, as Independent Administrator of the Estate of JOSHUA EDWARDS, deceased,

        Plaintiff,

v.

PATRICK HARTSHORN, the SHERIFF OF VERMILION COUNTY, in his official capacity; VERMILION COUNTY; OFFICER LAURIE A. BERNARDI; and, OFFICER CODY THORN,

        Defendants.

Case No.

## COMPLAINT AT LAW

Plaintiff Tamorah Jerome (hereafter "Plaintiff"), as Independent Administrator of the Estate of Joshua Edwards, by counsel Meyer & Kiss, LLC and Law Offices of David S. Lipschultz, Inc., alleges as follows:

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of the rights of Mr. Joshua Edwards, Plaintiff's decedent (hereafter "Mr. Edwards"), secured by the United States Constitution, and pursuant to state law.

### JURISDICTION & VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3. Venue is proper under 28 U.S.C. § 1391(b) because one or more of the defendants reside in this judicial district and all defendants are residents of Illinois. Further, a substantial part of the events and omissions giving rise to this claim occurred within this judicial district.

PARTIES

4. Plaintiff has petitioned the Vermilion County Court asking to be appointed as the duly appointed independent administrator of Mr. Edwards's estate (Case No. 22-PR-000059 (Ill. Cir. Ct., Vermilion County).

5. Sheriff Patrick Hartshorn (hereafter "Sheriff Hartshorn"), Defendant, is the Sheriff of Vermilion County, Illinois and is sued in his official capacity.

6. Vermilion County, Illinois (hereafter "Vermilion County"), Defendant, is joined in this action pursuant to Carver v. Sheriff of LaSalle County, 324 F.3d 947 (7th Cir. 2003).

7. Officer Laurie A. Bernardi (hereinafter "Officer Bernardi") is an employee of Sheriff Hartshorn serving as a correctional officer. At all times relevant to this Complaint, Officer Bernardi was acting within the scope of her employment with Sheriff Hartshorn and under the color of law.

8. Officer Cody Thorn (hereinafter "Officer Thorn") is an employee of Sheriff Hartshorn serving as a correctional officer. At all times relevant to this Complaint, Officer Thorn was acting within the scope of his employment with Sheriff Hartshorn and under the color of law.

ALLEGATIONS OF FACTS

Hoopeston Police Informed the Sheriff's Office That Mr. Edwards Was Highly Intoxicated

9. On April 9, 2021, in the evening, Hoopeston police officers, Sergeant Quentin Morgan and Officer A. Linares (hereinafter "Hoopeston Officers"), were dispatched to Mr. Edwards's residence in Hoopeston, Illinois in response to a domestic dispute. Hoopeston Officers observed Mr. Edwards under the influence of methamphetamine, acting in an agitated

manner, and speaking to people who were not present. The officers left the residence without arresting Mr. Edwards.

10. A short time later that same day, Hoopeston Officers were dispatched again to Mr. Edwards's residence for an ambulance call. Mr. Edwards needed to be transported to the hospital emergency room and the paramedics took him to Hoopeston Carle Hospital. Hoopeston Officers accompanied Mr. Edwards to the hospital and stayed with him until he was released.

11. Hours later, now on April 10, 2021, at approximately 3:12 a.m., Hoopeston Officers were dispatched again to Mr. Edwards's Hoopeston residence based on a report of a disturbance. This time, Hoopeston Officers arrested Mr. Edwards.

12. At that time, the officers noted in their police report details of these incidents, including that Mr. Edwards was under the influence of methamphetamine and was acting in an excited manner; was "out of control;" and was talking to people who were not present.

Sheriff Hartshorn's Office Noted Mr. Edwards As "Very Intoxicated" When Booked Into The Vermilion County Jail

13. The Hoopeston Officers transported Mr. Edwards to the Vermilion County Jail, in Danville. The Jail is also referred to as the Public Safety Building.

14. At the Jail, Hoopeston Officers communicated essential details of Mr. Edwards's poor physical and mental state to Sheriff Hartshorn's agents as part of the intake process. Sheriff Hartshorn's agents were informed directly that Mr. Edwards was "highly intoxicated."

15. A Vermilion County Sheriff's deputy documented at that time that Mr. Edwards was "very intoxicated." There are polices within the Vermilion County Sheriff's Department that lay out the responsibilities of deputies when they encounter arrestees that are intoxicated.

16. At approximately 4:00 a.m., Vermilion County Sheriff's deputies placed Mr. Edwards into a holding cell in the booking area of Vermilion County Jail. They did not notify any supervisors or medical staff that Mr. Edwards was "highly intoxicated."

<u>For Over a Day Sheriff's Officers Failed To Provide Medical Care to Mr. Edwards Despite His Obvious Illness and Strange Behaviors</u>

<u>April 10, 2021</u>

17. Throughout the morning, day and night of April 10, 2021, Officer Bernardi and other correctional officers working in the booking area of the Jail directly observed that Mr. Edwards was acting in a bizarre manner; speaking at a very rapid pace; screaming regularly; striking objects and walls in the cell; and, in the words of one deputy, acting like he was under the influence of illicit drugs.

18. Not one of these correctional officers took any actions whatsoever to address Mr. Edwards's serious medical needs. Again, no supervisor or medical staff was notified of this behavior.

<u>April 11, 2021</u>

19. The next morning, April 11, 2021, Officer Bernardi was working again in the booking area where Mr. Edwards was incarcerated. Officer Bernardi observed Mr. Edwards in his cell a few times beginning at 7:20 a.m. until the time of Mr. Edward's death later that morning. Officer Bernardi observed and documented that Mr. Edwards was acting in the same ill manner on this day as he had been on the prior day.

20. On the same morning, Officer Bernardi also observed unusual markings and bruises on Mr. Edwards's arms. Officer Bernardi requested a Sergeant have the spork removed from Mr. Edwards's cell in case Mr. Edwards was harming himself.

21. Officer Thorn was working with Officer Bernardi on this shift. Officer Thorn also observed Mr. Edwards in his cell a few times that morning beginning at 7:20 a.m. until the time of Mr. Edward's death. Officer Thorn observed that Mr. Edwards did not respond to anything Officer Thorn said. Officer Thorn observed that Mr. Edwards was acting like he "wasn't all there." Officer Thorn observed that Mr. Edwards was squirming around the floor while laying on his back and smacking the wall with his hands. Officer Thorn believed Mr. Edwards was withdrawing from illicit drugs. Officer Thorn never contacted any medical staff regarding the observation made of Mr. Edwards's behavior.

22. Not one of the correctional officers took any actions whatsoever to address Mr. Edwards's serious medical needs.

23. An inmate incarcerated in a cell near Mr. Edwards's cell informed Sheriff Hartshorn's agents in the booking area that Mr. Edwards was very sick and needed help. The inmate thought Mr. Edwards was going to die.

24. The Defendants did not take any actions whatsoever to address Mr. Edwards's serious medical needs in response to the inmate's requests.

25. Methamphetamine intoxication is treatable with emergency department care. Failure to treat methamphetamine intoxication can lead to death, as it did in the case of Mr. Edwards.

26. The Illinois Law Enforcement Training and Standards Board requires that correctional officers receive training that teaches them that arrestees that are highly intoxicated or experiencing drug withdrawal are experiencing potentially fatal conditions that require immediate medical attention.

5

<u>Medical Equipment Doesn't Work; Defendants Not Trained to Provide CPR/AEDs</u>

27. Soon thereafter, at approximately 10:45 a.m., Vermilion County Sheriff's deputies discovered Mr. Edwards unconscious in his cell. A Vermilion County Sheriff's sergeant applied an AED medical device to Mr. Edwards.

28. However, the AED was not working.

29. Next, the sergeant tried to resuscitate Mr. Edwards by using CPR. A few minutes later, the sergeant used a second AED on Mr. Edwards and continued CPR.

30. Correctional officers at the Vermilion County Jail are not required to maintain their CPR certification. Correctional officers are certified in CPR during their training at the academy, but Sheriff Hartshorn does not require that they renew that certificate after it expires.

31. These efforts were unsuccessful in resuscitating Mr. Edwards.

32. On April 11, 2021, at approximately 11:00 a.m., Mr. Edwards died in custody at the Vermilion County Jail.

33. Each and every Vermilion County Sheriff's employee who observed Mr. Edwards's condition prior to his death knew that Mr. Edwards was critically ill; had a serious medical need that was not being met; and needed to be hospitalized. They also were supposed to be trained regarding the polices of the Vermilion County Sheriff's Department when it came to arrestees suffering from the condition that Mr. Edwards exhibited, yet they failed in all aspects to follow the written policies.

34. Each of the Defendants acted intentionally, with malice, willfulness, and deliberate indifference to the rights of Mr. Edwards, and violated Mr. Edwards's constitutional rights by willfully ignoring his serious medical needs.

35. Mr. Edwards is survived by two children.

36. As a result of the unjustified and unconstitutional conduct of each of the Defendants, Mr. Edwards experienced pain, suffering, emotional distress, injury, and ultimately death.

37. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has experienced, and will continue to experience into the future, pecuniary loss, loss of society, grief, sorrow, and mental suffering.

CLAIM ONE
42 U.S.C. 1983: Denial of Medical Care
Against Defendants Officer Laurie A. Bernardi and Officer Cody Thorn

38. Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

39. Plaintiff is entitled to relief against Officer Bernardi and Officer Thorn pursuant to 42 U.S.C. § 1983, based on violations of the Fourteenth Amendment to the U.S. Constitution.

40. At all times material, Plaintiff's decedent, Joshua Edwards, had a constitutionally protected right under the Fourteenth Amendment to the U.S. Constitution to receive needed care while in the Vermilion County Jail, and to have his health issues timely and properly assessed and treated.

41. Officer Bernardi and Officer Thorn deliberately disregarded the immediate and serious threats to Mr. Edwards's mental and medical health and well-being and exhibited deliberate and callous indifference to serious medical and mental health needs by denying access to intensive and structured medical health care, treatment and observation necessary to treat serious medical needs and prevent suffering and death.

42. Officer Bernardi and Officer Thorn were well aware that there were detainees confined in the Vermilion County Jail who suffered from severe medical health needs and were

at risk of injury and/or death. Despite this knowledge, Officer Bernardi and Officer Thorn intentionally and knowingly failed to provide serious, ongoing case management and treatment for such inmates and failed to regularly monitor their medical health care needs.

43. Officer Bernardi and Officer Thorn knew at all times material to this action that there was a substantial risk that detainees with serious medical issues, left substantially untreated, could die, that such deaths were reasonably foreseeable, and that the threat of this was imminent and immediate.

44. Officer Bernardi and Officer Thorn deliberately disregarded the immediate and serious threat to detainees' medical health and well-being and exhibited deliberate indifference and callous indifference to their serious medical and psychological needs by denying and unreasonably delaying access to competent medical care to treat their serious medical needs, in that:

    (a) with full knowledge of prior in-custody deaths, and knowing that failing to provide adequate medical care to detainees with serious medical issues could lead to reasonably foreseeable deaths, Officer Bernardi and Officer Thorn simply failed to provide needed care and attention;

    (b) with full knowledge of detainees with histories of serious medical issues, Officer Bernardi and Officer Thorn's actions in failing to provide close observation and adequate medical care by trained medical professionals was so grossly substandard, incompetent, and inadequate as to fairly be characterized as medical and mental health care so cursory as to amount to no medical and mental health care at all.

45. In light of the aforementioned, Mr. Edwards suffered from both an objectively

and subjectively substantial risk of serious harm while under the care and custody of Officer Bernardi and Officer Thorn. Officer Bernardi and Officer Thorn reacted to this risk in an objectively and subjectively unreasonable manner.

46. It is more likely than not that the failures of Officer Bernardi and Officer Thorn as alleged above were the cause of Mr. Edwards's death.

47. As a result of Officer Bernardi and Officer Thorn's disregard of and indifference to Plaintiff's decedent's constitutionally protected right to be provided with proper care, Joshua Edwards's medical needs were ignored.

48. As a direct and proximate result of Officer Bernardi and Officer Thorn's deliberate indifference to Mr. Edwards's serious medical health needs, Mr. Edwards died from complications of serious medical issues on April 11, 2021.

49. Plaintiff asserts the same claims against Defendant Patrick Hartshorn under the doctrine of *respondeat superior*, based on the actions and inactions of each of the individual correctional officers.

WHEREFORE, Plaintiff prays for judgment as noted below.

CLAIM TWO
42 U.S.C. 1983: *Monell*
Against Defendant Sheriff Patrick Hartshorn

50. Plaintiff re-alleges the Allegations of Fact and all paragraphs of Claim One as if fully set forth herein.

51. The violations of Joshua Edwards's constitutional rights under the Fourteenth Amendment to the United States Constitution, his damages and the conduct of the individual

Defendants, were directly and proximately caused by the actions and/or inactions of the Vermilion County Sheriff, which has, with deliberate indifference:

(a) failed to establish and/or implement policies, practices and procedures to ensure that detainees at the Vermilion County Jail receive appropriate medical care for serious medical needs, and if necessary, health care services outside the Jail. Specifically, it was a widespread practice and/or official policy at the Vermilion County Jail not to contact emergency medical services on behalf of an inmates experiencing an obvious medical emergency without the prior approval of a supervisor, even where such approval was wrongfully withheld or denied. The Sheriff's Department keeps track of the number of trips detainees take to outside facilities, as the Department is concerned about the amount of money it would have to spend on medical care;

(b) failed to establish and/or implement policies, practices and procedures to ensure that detainees at the Vermilion County Jail receive appropriate medical care for serious medical health needs. Specifically, there is no medical staff at the facility from 3:00 p.m. until 8:00 a.m. the following day, and no medical staff present during the weekend. The correctional officers receive no medical training from the Jail nurse and are not required to maintain their CPR certification;

(c) failed to adequately monitor the deteriorating mental and medical health conditions of inmates. Specifically, correctional officers routinely fail to conduct mandatory cell checks, and even when they are conducted, the

        correctional officers do not properly conduct the cell checks to ensure the detainees are relatively healthy or otherwise alive;

  (d)    failed to ensure through training, supervision and discipline that medical staff at the Vermilion County Jail, in necessary circumstances, make a referral for health care services outside the Jail;

  (e)    failed to ensure through training, supervision and discipline that correctional and medical staff adequately communicate and document inmates' deteriorating mental and medical health conditions;

  (f)    failed to ensure through training, supervision and discipline that correctional and medical staff properly respond to inmates' deteriorating mental and medial health conditions;

  (g)    failed to contract for medical health services in a manner where financial incentives would not interfere with referring inmates for health care services outside the jail; and,

  (h)    possessed knowledge of deficiencies in the policies, practices, customs and procedures concerning inmates, and approved and/or deliberately turned a blind eye to these deficiencies.

52.    For example, one or more policymakers were made aware of the misconduct which led to the following lawsuits:

  (a)    <u>Jones v. Hartshorn</u>, No. 15-CV-2032, 2017 WL 3140360, at *4 (C.D.Ill. July 24, 2017) (summary judgment denied to Defendant Vermilion County jail guard on plaintiff's claims arising from plaintiff's dermatitis, tooth decay, and alleged rectal bleeding during his 2013 detention in the

11

Vermilion County Jail);

(b) Cox v. Hartshorn, 503 F. Supp. 2d 1078 (C.D. Ill. 2007) (alleging that jail officials refused to provide plaintiff medical care);

(c) Catron v. Vermilion County Jail, No. 2:13-cv-02271-HAB (filed Dec. 10, 2013) (alleging Jail officials refused to fill plaintiff's prescription for pain medication to address his chronic pain based on Sheriff Hartshorn's policy);

(d) Hayes v. Hartshorn, No. 05-2282, 2009 WL 722579 (C.D. Ill. Mar. 17, 2009) (alleging that that Nurse Galloway and Sheriff Hartshorn failed to provide adequate medical care);

(e) Smith v. Hartshorn, No. 09-2142, 2009 WL 2195909 (C.D. Ill. July14, 2009) (alleging that Jail medical staff and Sheriff Hartshorn failed to provide prompt treatment after plaintiff cut his elbow);

(f) Williams v. Lewellyn, No. 15-CV-2254, 2015 WL 6689643 (C.D. Ill. Nov. 2, 2015) (alleging that jail personnel failed to provide medical treatment after jail guards injured plaintiff arm);

(g) Estate of Moore v. Vermilion County, No. 19-CV-2209 (C.D. Ill) (alleging that Mr. Moore died in the Vermilion County Jail after he was beaten, and Jail personnel failed to provide medical treatment);

(h) Dorris v. Hartshorn, No. 08-CV-2041, 2009 WL 2431310 (C.D. Ill. Aug. 6, 2009) (alleging that Jail staff unconstitutionally denied plaintiff medical care);

(i) Miller v. Hartshorn, No. 18-CV-2050-CSB-EIL (filed Feb. 9,

    2018)(alleging that Jail personnel refused to render medical aid or call an ambulance for an inmate mother that delivered an infant into a toilet bowl); and,

(j) <u>Smithers v. Vermilion County</u>, et al., No. 21-CV-2023-SLD-JEH (filed Feb. 4, 2021)(alleging that Jail personnel refused to render medical aid or call for medical support to an inmate despite obvious signs of severe illness, including coughing up blood and passing blood in his stool, and eventually dying from meningitis, a treatable condition).

WHEREFORE, Plaintiff prays for judgment as noted below.

<u>CLAIM THREE</u>
<u>State Claim for Wrongful Death</u>
<u>Against Defendant Sheriff Patrick Hartshorn as Sheriff of Vermilion County</u>

53. Plaintiff re-alleges the Allegations of Fact as if fully set forth herein.

54. Joshua Edwards is survived by his minor children, who constitutes his heirs under Illinois law.

55. Mr. Edwards was officially pronounced dead on April 11, 2021.

56. The wrongful death of Mr. Edwards was proximately caused by the neglect, default, and/or willful and wanton conduct of the Defendants.

57. Plaintiff's state law claims are brought pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01 <u>et seq.</u>, for the pecuniary losses sustained by Mr. Edwards's next-of-kin, and the Illinois Survival statute, 755 ILCS 5/27-6, for Mr. Edwards's conscious pain and suffering prior to death.

58. Defendant Vermilion County and Hartshorn's employees failed to properly monitor and/or report the declining health and well-being of Mr. Edwards.

59. The wrongful conduct of Defendant Vermilion County and Hartshorn's employees was the direct and proximate cause of injury and damage to Mr. Edwards and his estate.

60. The heirs of Mr. Edwards have lost and will continue to lose pecuniary support, consortium, society, companionship as well as the love and affection of their father, and have incurred funeral and burial expenses as a proximate result of his wrongful death. WHEREFORE, Plaintiff prays for judgment as noted below.

CLAIM FOUR
State Claim for Willful and Wanton Negligence
Against Defendant Sheriff Patrick Hartshorn as Sheriff of Vermilion County

61. Plaintiff re-alleges the Allegations of Fact as if fully set forth herein.

62. Plaintiff additionally asserts Illinois state law claims of willful and wanton negligence against Defendant Sheriff Hartshorn as Sheriff of Vermilion County and his employees and agents who observed Mr. Edwards during his incarceration.

63. Each of these Defendants knew from their observation of Mr. Edwards that he needed immediate medical care and, through willful and wanton conduct, failed to take reasonable action to summon emergency medical services or other proper medical care.

64. Plaintiff asserts the same state law claims against Defendants Patrick Hartshorn and Vermilion County under the doctrine of *respondeat superior*, based on the actions and inactions of each of the individual correctional officers.

WHEREFORE, Plaintiff prays for judgment as noted below.

<u>CLAIM FIVE</u>
<u>State Claim for Indemnification</u>
<u>Against Defendant Sheriff Patrick Hartshorn as Sheriff of Vermilion County</u>
<u>and Vermilion County</u>

65. Plaintiff additionally asserts a state law indemnification claim against Defendants Patrick Hartshorn and Vermilion County pursuant to 745 ILCS 10/9-102.

PRAYER FOR JUDGMENT

66. Accordingly, plaintiff seeks judgment on her behalf and requests that appropriate compensatory and punitive damages be awarded against each of the Defendants on all federal law claims and that Plaintiff be entitled to reasonable attorneys' fees and costs, and that appropriate compensatory damages be awarded against each of the Defendants on all state law claims.

TAMORAH JEROME

By:

/s/ Louis J. Meyer

Louis J. Meyer
MEYER & KISS, LLC
311 W. Stratford Drive
Peoria, IL 61614
t. 309.713.3751
f. 312.585.7803
e. louismeyer@meyerkiss.com
w. www.meyerkiss.com

/s/ David S. Lipschultz

David S. Lipschultz
Law Offices of David S. Lipschultz, Inc.
200 S. Michigan Avenue, Suite 201
Chicago, IL 60604
t. 312.414.1778
f. 312.414.1887
e. david@dsllawoffice.com